United States District Court
Southern District of Texas

**ENTERED**

July 17, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOE GOOCH, Individually and          §
as Personal Representative           §
of the ESTATE OF JODY LYNN           §
GOOCH,                               §
                                     §
            Plaintiff,               §
                                     §
v.                                   §       CIVIL ACTION NO. H-17-1673
                                     §
PACKAGING CORP. OF AMERICA,          §
INC. and ELITE SPECIALTY            §
WELDING, LLC,                        §
                                     §
            Defendants.              §

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Packaging Corporation of America's Motion for Summary Judgment ("PCA's MSJ") (Docket Entry No. 57). After considering the Plaintiff's and Intervenors' Response to Defendant Packaging Corp. of America's Motion for Summary Judgment ("Plaintiff's Response") (Docket Entry No. 59), Defendant Packaging Corporation of America's Reply to Plaintiff and Intervenors' Response to Its Motion for Summary Judgment ("PCA's Reply") (Docket Entry No. 60), the state court pleadings, and the applicable law, the court concludes that PAC's MSJ should be granted.

## I.  Factual and Procedural Background

On April 25, 2017, plaintiff, Joe Gooch, initiated this action individually and as the personal representative of the estate of

his son, Jody Lynn Gooch ("Decedent"), in the 129th Judicial
District Court of Harris County, Texas, Cause No. 2017-27526,
against defendants, Packaging Corporation of America ("PAC") and
Elite Specialty Welding, L.L.C. ("Elite"), asserting claims for
negligence and gross negligence and seeking damages arising from
the Decedent's wrongful death on February 8, 2017.[1]   Plaintiff's
petition describes the factual background of this case as follows:

> 12.   An explosion occurred at approximately 11 am CST on
> Wednesday, February 8th at the PCA DeRidder
> Containerboard Mill owned by [PCA]. The facility was
> located in DeRidder, LA . . . Jody Lynn Gooch was a
> contractor working for Elite . . . at the time of the
> explosion. Elite . . . is principally located in Texas
> and hired decedent Jody Gooch in Texas. He was killed in
> the blast along with two other men, William Rolls, Jr[.]
> and Sedrick Stallworth, while they were engaged in
> contract work at the DeRidder facility.
>
> 13.   It is presently unclear exactly what the cause of
> the blast was, but both the United States Chemical Safety
> Board ("CSB") and OSHA are invest[igat]ing the blast.
> The preliminary results from the CSB indicate that a 30
> foot tall tank exploded killing Jody Lynn Gooch. It also
> intimates that welding or "hot work" was being performed
> and it is likely that the Defendants failed to assure the
> workers that the equipment being worked on had been
> purged, blocked or otherwise "cleared" of any potential
> combustible materials. The Defendant PCA is no stranger
> to such tragedies and had a similar incident for possibly
> similar reasons only a few years ago which resulted in
> fatalities.[2]

The Decedent is survived by his father (plaintiff Joe E.
Gooch), his mother (Intervenor Evelyn Tauber), two siblings

---

[1]Plaintiff's Original Petition, Jury Demand and Request for
Disclosure ("Plaintiff's Original Petition"), Exhibit 3 to Notice
of Removal, Docket Entry No. 1-3.

[2]<u>Id.</u> at 4 ¶¶ 12-13.

(Intervenors Bobby Gooch and Lameshia Machelle Springfield), and by one son (Derrick G. Gooch).[3]  Decedent's son has an action pending in the United States District Court for the Western District of Louisiana.[4]

PAC removed plaintiff's action to this court on June 5, 2017.[5] On July 5, 2017, plaintiff filed a motion to remand.[6]  On August 14, 2017, the court denied plaintiff's motion to remand upon concluding that defendant Elite had been improperly joined.[7]

On September 28, 2017, plaintiff filed a motion seeking to voluntarily dismiss defendant Elite,[8] which the court granted.[9]

On January 10, 2018, PCA filed a motion seeking to consolidate the action styled Estate of William Rolls, Jr. and Jackie Cormier

_____

[3]See Complaint in Intervention of Bobby Gooch and Lameshia Machelle Springfield, and Evelyn Tauber ("Complaint in Intervention"), Docket Entry No. 32, p. 1 ¶¶ 1-3; and Plaintiff Joe Gooch's Response to Interrogatory No. 6, Exhibit A to PCA's MSJ, Docket Entry No. 57-1, p. 4.

[4]PCA's MSJ, Docket Entry No. 57, p. 7 ¶ 11 & n.4 (citing Exhibit B-1, Derrick Gooch's Petition for Damages, Docket Entry No. 58, pp. 4-11); Plaintiff's Response, Docket Entry No. 59, p. 7 ¶ 12.  See also PCA's Reply, Docket Entry No. 60, p. 4.

[5]Notice of Removal, Docket Entry No. 1.

[6]Plaintiff's Motion to Remand Based on Improper Removal by Packaging Corp. of America, Inc. ("Motion to Remand"), Docket Entry No. 9.

[7]Memorandum Opinion and Order, Docket Entry No. 15, p. 11.

[8]Motion to Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(2) as to Defendant Elite Specialty Welding, LLC (Docket Entry No. 27).

[9]Order, Docket Entry No. 28.

v. Elite Specialty Welding, LLC, et al., 4:17-CV-03284, pending
before a different judge of this court.[10]

On February 6, 2018, Intervenors — the Decedent's surviving
mother, brother, and sister — filed a Motion for Leave to Intervene
as Plaintiffs Under Rule 24(b),[11] which the court granted.[12]  The
Intervenors assert claims for negligence and gross negligence and
seek damages for mental anguish and loss of consortium; the
Decedent's mother also seeks damages under the Texas Wrongful Death
Statute, Tex. Civ. Prac. & Rem. Code § 71.001, et seq.[13]

At a hearing held on September 21, 2018, the court denied
PCA's motion to consolidate without prejudice.[14]

On November 16, 2018, PCA filed an Amended Motion to
Consolidate,[15] which the court denied on January 7, 2019.[16]

---

[10]Defendant Packaging Corporation of America, Inc.'s Motion to
Consolidate *Cormier* Lawsuit with Pending Action, Docket Entry
No. 29.

[11]Motion for Leave to Intervene as Plaintiffs Under Rule 24(b),
Docket Entry No. 30.

[12]Order Granting Motion to Intervene as Plaintiffs Under
Rule 24(b), Docket Entry No. 31.

[13]Complaint in Intervention, Docket Entry No. 32.

[14]Hearing Minutes and Order, Docket Entry No. 48.

[15]Defendant Packaging Corporation of America, Inc.'s Amended
Motion to Consolidate *Cormier* Lawsuit with Pending Action, Docket
Entry No. 50.

[16]Order, Docket Entry No. 53.

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.   Fed. R. Civ. P. 56.   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).   A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."   Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)).   "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."   Id.   If, however, the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.   Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).   Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."   Little, 37 F.3d at 1075.

### III.  Analysis

PCA moves the court for summary judgment arguing that the claims asserted in this action are governed by Louisiana law, and that neither plaintiff nor intervenors have capacity to assert claims under Louisiana law.[17]   PCA argues that it is entitled to summary judgment because

> Plaintiff Joe Gooch has brought suit as both the legal representative of the estate of Decedent and also as his surviving father.  Intervenors have brought suit as the mother and siblings of Decedent.  Plainly, under Louisiana law, not one of these individuals has capacity to maintain a claim against PCA.  It is undisputed that Decedent has a surviving son, Derrick Gooch, who has filed a wrongful death and survival action in Louisiana. Louisiana Civil Code Article 2315.1 (survival action) and Article 2315.2 (wrongful death) establish a hierarchy of those that have a right of action.  That is, suit may only be brought by the spouse and child of the deceased. Only in the event there exists no spouse or child may the parents of a decedent bring suit, and only if there exist no spouse, child or parents may the siblings of a decedent bring suit.[18]

Asserting that "Texas Has the Most Significant Relationship With The Instant Litigation,"[19] Plaintiff and Intervenors respond:

> While the fact that the Decedent was killed at a PCA facility in Louisiana weighs in favor of the application of Louisiana law, that fact alone is not determinative of which state law should be applied.  The parties agree that the "most significant relationship" test is appropriate for the analysis of choice of law, but Plaintiff disagrees with the outcome upon the application

---

[17]PCA's MSJ, Docket Entry No. 57, pp. 1 and 6.  See also PCA's Reply, Docket Entry No. 60, p. 1.

[18]PCA's MSJ, Docket Entry No. 57, p. 6 ¶ 8.

[19]Plaintiff's Response, Docket Entry No. 59, pp. 2 and 9.

-6-

> to the facts of this matter.   Additionally, Plaintiff
> disagrees that Defendant's Motion (even if granted) would
> destroy all of the remaining claims brought by the
> Plaintiffs.[20]

Plaintiff and Intervenors argue that plaintiff "would still have a
right to maintain any claims brought on behalf of the estate of
Jody Lynn Gooch,"[21] and that they all "would still be able to bring
claims for their own mental anguish and loss of consortium which
are actions independent of survivorship or wrongful death."[22]
Plaintiff and Intervenors also argue that

> Texas law has already been applied to this matter when
> [he] and Evelyn Tauber were awarded workers compensation
> benefits by the Texas Department of Insurance — Division
> of Workers Compensation.  A decision to apply Louisiana
> law at this late juncture would deprive the insurance
> carrier of their right to seek subrogation for these
> funds.[23]

**A.   Choice of Law Analysis Requires Application of Louisiana Law**

   1.   Applicable Law

   "In diversity cases, federal courts apply the choice-of-law
rules of the forum state."  National Union Fire Insurance Company
of Pittsburgh, Pennsylvania v. American Eurocopter Corp., 692 F.3d
405, 408 (5th Cir. 2012) (citing Klaxon Co. v. Stentor Electric
Manufacturing Co., 61 S. Ct. 1020, 1021 (1941)).  "Texas courts

---

[20]Plaintiff's Response, Docket Entry No. 59, pp. 5-6 ¶ 7.

[21]Id. at 6 ¶ 9.

[22]Id.

[23]Id. ¶ 10.

-7-

initially determine whether there is a conflict between Texas law and the other potentially applicable law." Bailey v. Shell Western E&P, Inc., 609 F.3d 710, 722 (5th Cir. 2010). See also Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 419 (Tex. 1984) ("[W]e must first determine whether there is a difference between the rules of Texas and New Mexico on this issue."). When a conflict of laws exists in a tort case, "Texas courts generally follow the Restatement (Second) of Conflict of Law's 'most significant relationship' test, which entails considering the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6." National Union Fire Insurance Co., 692 F.3d at 408 (citing Torrington Co. v. Stutzman, 46 S.W.3d 829, 848 (Tex. 2000), and Restatement (Second) of Conflict of Laws, § 173 (2010)).

Section 145 sets forth the following contacts to be considered:

(1)   The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)   Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a)   the place where the injury occurred,

(b)   the place where the conduct causing the injury occurred,

-8-

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Id. § 145.

[T]he number of contacts with a particular state is not determinative. Some contacts are more important than others because they implicate state policies underlying the particular substantive issue. Consequently, selection of the applicable law depends on the qualitative nature of the particular contacts.

Duncan, 665 S.W.2d at 421 (citing Gutierrez v. Collins, 583 S.W.2d 312, 319 (Tex. 1979)). See also Crim v. International Harvester Co., 646 F.2d 161, 163 (5th Cir. 1981) (recognizing that the court's analysis under the most significant relationship test "does not turn on the number of contacts the event had with each jurisdiction, but, more importantly, on the qualitative nature of those contacts as they are affected by the policies of the rule"). Section 6 of the Restatement (Second) of Conflicts sets forth the following factors to be considered:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

-9-

    (b)   the relevant policies of the forum,

    (c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d)   the protection of justified expectations,

    (e)   the basic policies underlying the particular field of law,

    (f)   certainty, predictability and uniformity of result, and

    (g)   ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  Section 146, governing personal injuries, and § 175, governing wrongful death, create a presumption that

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws §§ 146, 175.

A choice-of-law determination is a legal question for the court to decide.  <u>National Union Fire Insurance Co.</u>, 692 F.3d at 408.  <u>See also Hughes Wood Products, Inc. v. Wagner</u>, 18 S.W.3d 202, 204 (Tex. 2000) ("Which state's law governs an issue is a question of law for the court to decide.").  "But determining the state contacts to be considered by the court in making this legal determination involves a factual inquiry."  <u>Hughes Wood Products,</u>

18 S.W.3d at 204.  "Thus, a movant for summary judgment seeking to have the law of another state applied must satisfy its burden of proof with respect to fact questions necessary to the choice of law decision."  Id. at 205.  "In the posture of a summary judgment ruling, facts genuinely in dispute are considered in the light most favorable to the non-movant."  National Union Fire Insurance Co., 692 F.3d at 408.

   2.   Application of Texas's Choice of Law Rules to the
        Asserted Claims and the Undisputed Facts

   Plaintiff has asserted causes of action for negligence and gross negligence that resulted in the Decedent's death and "seeks to recover damages for the alleged pain and suffering of his son prior to his death and for damages relating to the alleged wrongful death of his son,"[24] including damages for "loss of friendship and services of his son,"[25] and for "significant mental anguish."[26] Intervenors assert causes of action for negligence, gross negligence, and wrongful death,[27] and allege that "Evelyn Tauber is entitled to recover damages under the Texas wrongful death statute and that all three Intervenors are separately entitled to damages

---

   [24]Id. at 4 ¶ 2 (citing Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, pp. 6-7 ¶¶ 20-29).

   [25]Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, p. 6 ¶ 21.

   [26]Id. ¶ 22.

   [27]Complaint in Intervention, Docket Entry No. 32, pp. 3-4 ¶¶ 11-16.

for mental anguish and loss of consortium."[28]  All the causes of action in this case rely on the same theory of liability, i.e., that PCA's negligence and/or gross negligence resulted in the wrongful death of the Decedent, Jody Lynn Gooch.  Because the parties argue that either Texas or Louisiana law applies, this court's inquiry is limited to the substantive law of those two states.[29]  See Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base, Germany), 81 F.3d 570, 577 (5th Cir.), cert. denied, 117 S. Ct. 583 (1996) (citing Mitchell v. Lone Star Ammunition, Inc., 913 F.2d 242, 249 (5th Cir. 1990) ("Of the multitude of states with a relationship to the parties and occurrence in question, only Texas and North Carolina need be considered — the parties have only asserted the applicability of the laws of these two states.")).

(a) Conflicts Exist Between Texas and Louisiana Law

Citing the Texas Civil Practices & Remedies Code §§ 71.004 and 71.021 and the Louisiana Civil Code Articles 2315.1 and 2315.2, PCA

---

[28]Plaintiff's Response, Docket Entry No. 59, p. 4 ¶ 3 (citing Complaint in Intervention, Docket Entry No. 32, pp. 4-5 ¶¶ 17-18).

[29]Plaintiff's Response, Docket Entry No. 59, pp. 2 and 9 (asserting that "Texas Has the Most Significant Relationship With The Instant Litigation"), and id. at 5 ¶ 7 (agreeing that "the 'most significant relationship' test is appropriate for the analysis of choice of law"); PCA's MSJ, Docket Entry No. 57, pp. 2 and 8 ("Texas Choice of Law Principles Dictate That Louisiana Law Applies to Plaintiffs' Survival and Wrongful Death Actions"); id. at 10 ("Louisiana Has The Most Significant Relationship With The Instant Litigation").

argues that "Louisiana and Texas state laws differ with regard to whether the parents and/or siblings of a deceased individual have capacity to bring a survival or wrongful death action when a surviving child is present."[30]  PCA argues that

> [t]he Louisiana Civil Code establishes a hierarchy of beneficiaries who can recover in [] survival and wrongful death actions. . . . Pursuant to Louisiana Civil Code Arts. 2315.1 and 2315.2, as long as there is a surviving spouse and/or child, no other beneficiary may recover under a survival or wrongful death theory of liability.
>
> [] On the other hand, Texas Law permits the surviving spouse, children, and parents of the deceased to bring one or more wrongful death actions for the benefit of all.  Tex. Civ. Prac. & Rem. Code § 71.004. Further, under Texas law, survival actions may be brought "in favor of the heirs, legal representatives, and the estate of the injured person."  *Id*.  Tex. Civ. Prac. & Rem. Code § 71.021.  Texas law clearly expands the scope of those who may maintain claims in survival or wrongful death beyond that contemplated by Louisiana.[31]

Plaintiff and Intervenors agree that "there is a conflict of law between Texas and Louisiana law regarding whether or not parents or siblings can recover under survival or wrongful death theories of liability,"[32] but argue that PCA

> has not presented any evidence or arguments suggesting a conflict of law that prevents Joe Gooch from pursuing the claims he is bringing on behalf of the Estate of Jody Lynn Gooch.  Additionally, [PCA] has not presented any evidence or arguments suggesting a conflict of law

---

[30]PCA's MSJ, Docket Entry No. 57, p. 10 ¶ 17.

[31]Id. ¶¶ 17-18.  See also id. at n. 5 (noting that "Texas law does not permit a surviving sibling such as Intervenors Bobby Gooch and Lameshia Machelle Springfield to bring claims in wrongful death").

[32]Plaintiff's Response, Docket Entry No. 59, p. 8 ¶ 16.

> between Texas and Louisiana concerning whether Plaintiff
> or Intervenors could still maintain actions other than
> those of survival or wrongful death, specifically mental
> anguish and loss of consortium claims.   Therefore these
> claims should be preserved regardless of the Court['s]
> determination concerning [PCA's MSJ].[33]

The Texas Civil Practice and Remedies Code § 71.021 permits survival actions to be brought "in favor of the heirs, legal representatives, and the estate of the injured person."  But the Louisiana Civil Code Article 2315.1 only permits the estate to bring the survival action in the absence of surviving immediate relatives.  Accordingly, the court concludes that a conflict exists between Texas and Louisiana law as to whether the representative of the Decedent's estate can maintain a survival action against PCA. See Movant v. Oil States International, Inc., 3 F. Supp. 3d 561, 572-73 (E.D. La. 2014) (recognizing conflict between Texas and Louisiana law regarding the ability of an estate representative to bring a survival action).

Plaintiff's and Intervenors' contention that PCA has failed to present "evidence or arguments suggesting a conflict of law between Texas and Louisiana concerning whether Plaintiff or Intervenors could still maintain actions other than those of survival or wrongful death, specifically mental anguish and loss of consortium claims,"[34] has no merit because neither plaintiff nor Intervenors have asserted causes of action for loss of consortium and/or mental

---

[33]Id. at 8-9 ¶ 16.

[34]Id.

-14-

anguish that are independent of their causes of action for negligence and gross negligence for which they seek loss of consortium and mental anguish as elements of damages. Moreover, neither plaintiff nor Intervenors have cited any authority from which the court could conclude that such claims are cognizable under Texas law. See Roberts v. Williamson, 111 S.W.3d 113, 115-20 (Tex. 2003) (recognizing that all statutory beneficiaries under the Texas Wrongful Death Act are entitled to recover damages not only for loss of companionship but also mental anguish, and declining to extend the right to recover damages for loss of consortium beyond those made available by the Texas Wrongful Death Act); Boyles v. Kerr, 855 S.W.2d 593, 594 (Tex. 1993) ("We hold that there is no general duty in Texas not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty.").

    (b)  Section 145 Contacts

    **(1)  Place Where the Injury Occurred**

The place of the injury is DeRidder, Louisiana, where the Decedent died in an explosion at PCA's Containerboard Mill.[35] This contact weighs heavily in favor of the application of Louisiana law because Texas courts recognize that the most significant relationship test includes a presumption in favor of the law of the

---

[35]See Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, p. 4 ¶ 12; Complaint in Intervention, Docket Entry No. 32, p. 2 ¶ 9.

place of the injury in personal injury and wrongful death cases. See Enterprise Products Partners, L.P. v. Mitchell, 340 S.W.3d 476, 480 (Tex. App. — Houston [1st Dist.] 2011, pet. abated) (citing Restatement (Second) of Conflict of Laws §§ 146, 175).

### (2) Place Where the Conduct Causing the Injury Occurred

Plaintiff and Intervenors allege that PCA failed to provide the Decedent with a safe place to work at the Containerboard Mill in DeRidder, Louisiana, by inter alia failing to maintain equipment, failing to clean or purge equipment of potentially combustible material, failing to provide sufficient personnel to perform operations, failing to follow policies and protocols, and "creating an environment and condition that allowed the deadly explosion."[36] Plaintiff also alleges that PCA failed to learn from a similar incident in 2008 at a facility in Tomahawk, Wisconsin, where three workers were killed while welding on a storage tank.[37] Exhibit B to PCA's MSJ is the Declaration of Bruce Kummerfeldt, PCA's Senior Director of Health and Safety.  In pertinent part Kummerfeldt states:

> 3.    PCA is a corporation organized under the laws of Delaware.   PCA's  corporate  headquarters  and principal place of business are in Lake Forest,

---

[36]Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, p. 5 ¶ 15(g); Complaint in Intervention, Docket Entry No. 32, p. 3 ¶ 11(g).

[37]Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, pp. 4-5 ¶ 14.

Illinois.  From that location, the majority of
PCA's senior management team, including its Chief
Executive Officer, Executive Vice President,
Chief Financial Officer, Senior Vice President of Sales
and Marketing, and General Counsel, direct,
control, and coordinate the corporation's
activities.  PCA's Senior Vice President of Mill
Operations operates out of Florida and its Vice
President of Process Control and Engineering
Technology operates out of Tennessee.  None of
PCA's senior management team operate out of Texas.

4.   The decision related to the operation and safety of
the DeRidder Mill are made by individuals either
operating out of the DeRidder Mill or by the
senior-management team operating out of Lake
Forest, Illinois.[38]

Citing the Kummerfeldt Declaration and 29 C.F.R. § 1910.119,
plaintiff and Intervenors argue that "[s]ome or all of the[] people
[who] would have been responsible (to varying degrees) for ensuring
process safety management principals, under OSHA regulation, were
carried out at all PCA plants nationwide — including DeRidder."[39]
Plaintiff and Intervenors argue that

[a]s a result, the facts presented at trial would likely
center, in large part, around PCA's failure to learn the
lessons at their prior fatal accidents (specifically one
that was virtually identical to the one that killed Jody
Gooch) and their failure to communicate them to their
facilities throughout the country, including those in
Texas and their one facility in Louisiana.  As a result,
a significant portion of the conduct causing the injury
to occur almost certainly took place somewhere other than
Louisiana.[40]

---

[38]Declaration of Bruce Kummerfeldt ("Kummerfeldt Declaration"),
Exhibit B to PCA's MSJ, Docket Entry No. 58, pp. 2-3 ¶¶ 3-4.

[39]Plaintiff Response, Docket Entry No. 59, p. 10 ¶ 20.

[40]Id. ¶ 21.

Plaintiff and Intervenors conclude "this factor does not point to the application of Louisiana law; arguably it would instead point to the application of Illinois law."[41]

PCA has submitted undisputed evidence in the form of the Kummerfeldt Declaration showing that decisions related to the operation and safety of the DeRidder Mill are made either by individuals operating out of the DeRidder Mill or by the senior-management team operating out of Lake Forest, Illinois.  The conduct causing the injury thus discloses contacts with Louisiana and Illinois, but does not disclose any contacts with Texas.  "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort."  Restatement (Second) of Conflict of Laws § 145, cmt. e.  "This is particularly likely to be so with respect to issues involving standards of conduct, since the state of conduct and injury will have a natural concern in the determination of such issues."  Id.  The undisputed fact that at least some of the conduct causing the injury occurred in Louisiana, coupled with the absence of evidence that any of the conduct causing the injury occurred in Texas, leads the court to conclude that the place where the conduct causing the injury occurred weighs in favor of applying Louisiana law.

---

[41]Id. ¶ 22.

### (3) Domicile, Residence, Place of Incorporation, and Place of Business of the Parties

Plaintiffs and Intervenors allege that they are Texas residents, and that PCA is a Delaware corporation with its principal place of business in Illinois.[42] Citing <u>Brown v. Cities Service Oil Co.</u>, 733 F.2d 1156, 1159 (5th Cir. 1984), PCA argues that "[c]ourts in the Fifth Circuit have decisively held that a Plaintiff's residence in Texas, without more, is not sufficient to support application of Texas law."[43] PCA argues that "this factor, without more, cannot sway this Court from applying Louisiana law."[44] Plaintiff and Intervenors argue that "this factor does not skew towards the application of Louisiana law."[45]

In <u>Brown</u>, 733 F.2d at 1159, the Fifth Circuit held that the facts that the plaintiff was a Texas resident at the time of trial and that he was examined by two Texas doctors in preparation for trial, were entitled to little weight when those contacts comprised the totality of the contacts with Texas, and both the injury and the conduct causing the injury occurred in Louisiana. Because the plaintiff and the Intervenors are residents of Texas, while PCA

---

[42]Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, pp. 2-3 ¶¶ 2-4; Complaint in Intervention, Docket Entry No. 32, pp. 1-2 ¶¶ 1-4.

[43]PCA's MSJ, Docket Entry No. 57, p. 12 ¶ 26.

[44]<u>Id.</u> at 13.  <u>See also</u> PCA's Reply, Docket Entry No. 60, pp. 2-3.

[45]Plaintiff's Response, Docket Entry No. 59, p. 11 ¶ 24.

does business in Louisiana but is a Delaware corporation with its principal place of business in Illinois, this factor weighs in favor of the application of Texas law, but only weakly.  See Hooper v. Marriott International, Inc., 979 F. Supp. 2d 735, 741 (N.D. Tex. 2013) (noting that one's place of residence "receives less weight than the place of injury in the choice-of-law analysis"); Beatty v. Isle of Capri Casino, Inc., 234 F. Supp. 2d 651, 656 (E.D. Tex. 2002) ("[T]he case law and the Restatement instruct this court to place more emphasis on the place of the alleged misconduct than on the residential preference of the plaintiff.").

### (4) Place Where the Parties' Relationship is Centered

Plaintiff and Intervenors allege that the Decedent was employed by Elite to perform work at PCA's Containerboard Mill in Louisiana and died performing that work.[46]  Asserting that the operative Purchase Order between PCA and Elite was entered into in Louisiana,[47] PCA argues that "[t]he relationship between the parties is centered on the Decedent's work at the PCA Containerboard Mill in DeRidder, Louisiana."[48] The relationship shared by the parties

---

[46]Plaintiff's Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-3, p. 4 ¶¶ 12-13; Complaint in Intervention, Docket Entry No. 32, p. 2 ¶¶ 9-10.

[47]PCA's MSJ, Docket Entry No. 57, p. 13 ¶ 27 (citing Kummerfeldt Declaration, Exhibit B to PCA's MSJ, Docket Entry No. 58, p. 3 ¶ 5).

[48]PCA's MSJ, Docket Entry No. 57, p. 13 ¶ 27.

consists of the Decedent having been employed by Elite to work at PCA's mill in Louisiana pursuant to a Purchase Order between PCA and Elite entered in Louisiana.  Because PCA did not have a direct relationship with the plaintiff, the Intervenors, or the Decedent, the parties' indirect relationship was centered in Louisiana, the site of the injury.  See, e.g., Beatty, 234 F. Supp. 2d at 655–56 (concluding that where the plaintiff merely visited the casino location, the defendant did not have an individual relationship with plaintiff specifically, so the site of the casino was the center of the parties' relationship).  Accordingly, this contact weighs in favor of applying Louisiana law.

(c)  Section 6 Factors

The general factors and policy considerations set out in § 6 of the Restatement (Second) of Conflict of Laws also dictate that for purposes of certainty, uniformity, and predictability PCA should be subject to the laws of Louisiana for its actions in Louisiana.  As a company choosing to do business in Louisiana, PCA could reasonably expect that the laws of Louisiana would apply to an injury that occurred on its property in that state relating to decisions allegedly made in Louisiana.  So too, Decedent, by coming to Louisiana to work, could reasonably expect that Louisiana law would apply to his own actions and to any injuries that he incurred in that state.  "Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state

-21-

when he had justifiably molded his conduct to conform to the requirements of another state." Restatement (Second) of Conflict of Laws § 6, cmt. g.

Moreover, the State of Louisiana has chosen to enact laws that limit the number of claims resulting from a wrongful death or survivorship action by establishing a hierarchy of recovery that excludes certain claimants in favor of others. Louisiana therefore has a "specific interest" in defining standing and capacity to maintain the causes of action asserted in this lawsuit.

> Every rule of law, whether embodied in a statute or in a common law rule, was designed to achieve one or more purposes. A court should have regard for these purposes in determining whether to apply its own rule or the rule of another state in the decision of a particular issue.

Restatement (Second) of Conflict of Laws § 6, cmt. e. If the residence of the Decedent's beneficiaries determined which law would apply, PCA could be subjected to different state laws with varying results based on the beneficiaries' states of residence. See Crim, 646 F.2d at 163 (finding relevant policy considerations weigh in favor of applying law at situs of land because Arizona landowners should not be subjected to different legal duties depending on an invitee's state of residence).

Louisiana has the most qualitative contacts with this controversy, including "the place where the injury occurred," "the place where the conduct causing the injury occurred," and "the place where the relationship . . . between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2). In

-22-

contrast, Texas has very little connection to this controversy other than being the residence of the plaintiff, the Intervenors, and the Decedent, and the principal place of business of the Decedent's employer, all factors that are entitled to less weight than the place of injury, the place of the conduct causing the injury, and the place where the parties' relationship is centered. The court therefore concludes that Louisiana has the most significant relationship with this action and that Louisiana law should apply to the causes of action asserted by the plaintiff and Intervenors.  See Mathes v. Patterson-UTI Drilling Co. L.L.C., 44 F. Supp. 3d 691, 698 (S.D. Tex. 2014) (reaching a similar conclusion on analogous facts); Jordan v. Chevron U.S.A., Inc., Civil Action No. H-18-3496, 2018 WL 5723148, at *2-3 (S.D. Tex. Nov. 1, 2018) (same).

**B.  Application of Louisiana Law to the Undisputed Facts**

Asserting that "Neither Plaintiff nor the Intervenors Have Capacity to Bring A Claim Under Louisiana Law,"[49] PCA argues that it "is entitled to summary judgment" because "Plaintiffs' own responses to discovery conclusively demonstrate that they lack capacity, and they, therefore, will be unable to adduce any evidence establishing they have a right of action."[50]  PCA argues:

---

[49]PCA's MSJ, Docket Entry No. 57, p. 17.

[50]Id. ¶ 39.

-23-

It is undisputed that Decedent has left a surviving
child, Derrick Gooch, who, has brought his own lawsuit to
recover on behalf of his father under Louisiana's
survivorship and wrongful death statutes.   Because
Decedent left a surviving child, Plaintiff (the surviving
father), Intervenor Evelyn Tauber (the surviving mother)
and Intervenors Bobby Gooch and Lameshia Machelle
Springfield (the surviving siblings) do not have a right
to recovery under either Louisiana's survivorship or
wrongful death statute.   Accordingly, their claims must
be dismissed.[51]

The Plaintiff and Intervenors do not dispute that they lack

capacity to bring claims under Louisiana law.   Instead, plaintiff

and Intervenors argue

that "[p]ublic policy would favor allowing legitimate
claims to go forward in the face of conflicting state
statutes concerning who can recover for the death of a
family member,"[52]

that "Jody Lynn Gooch was a Texas resident employed by a
Texas Company doing work just over the border in
Louisiana.  All four Plaintiffs are Texas residents. . .
Texas has a significant interest in this matter and Texas
law should apply,"[53] and

that "there is no legitimate reason that the Louisiana
legislature should be concerned with the application of
its statute . . . to cut off a Texas resident's claim
against an Illinois corporation."[54]

Louisiana Civil Code Article 2315.1 governs survival actions

and articulates a specific hierarchy for identifying who has the

right of action.   In pertinent part Article 2315.1 provides:

---

[51]Id. ¶ 40.  See also PCA's Reply, Docket Entry No. 60, pp. 5-8.

[52]Plaintiff's Response, Docket Entry No. 59, p. 12.

[53]Id. at 13 ¶ 30.

[54]Id. ¶ 32.

A.   If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:

   (1)   The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

   (2)   The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

   (3)   The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.

   (4)   The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

B.   In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.

C.   The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.

La. Civ. Code Art. 2315.1. Louisiana Civil Code Article 2315.2 establishes an almost identical hierarchy for recovery in the case of wrongful death actions. While a Decedent's succession representative is the last class of beneficiary who can bring a survival action, a Decedent's succession representative has no right to bring a wrongful death action. Pursuant to these Louisiana statutes neither a parent, a sibling, nor a

representative of the Decedent's estate has a right of action under either the survivorship or wrongful death statute if the decedent has a surviving spouse or child.  See Jenkins v. Mangano Corp., 774 So. 2d 101, 105 (La. 2000) ("When a tort victim is survived by a child, the parents of the tort victim have no right to recover for the damages sustained by the victim or for their own damages for the victim's wrongful death."); Trahan v. Southern Pacific Co., 209 F. Supp. 334, 336 (W.D. La. 1962) ("Article 2315 clearly gives a surviving parent the right to sue for the wrongful death of a child only 'if he left no spouse or child surviving.'  The Courts of Louisiana have consistently held that a petition brought by one of the inferior beneficiaries must negative the existence of primary beneficiaries in order to state a right of action under this article.").

The undisputed facts of this case establish that the Decedent has a surviving son, Derrick Gooch, that the plaintiff is the Decedent's father and estate representative, and that the Intervenors are the Decedent's mother (Evelyn Tauber) and siblings (Bobby Gooch and Lameshia Machelle Springfield).  Under Louisiana law, the Decedent's surviving son is the only individual who has a right to recover damages under Articles 2315.1 and 2315.2.

To the extent that plaintiff and Intervenors argue that they have capacity to maintain actions under Louisiana law other than those of survival or wrongful death, i.e., for mental anguish and

-26-

loss of consortium,[55] the argument has no merit because neither plaintiff nor Intervenors have asserted causes of action for loss of consortium and/or mental anguish that are independent of their causes of action for negligence and gross negligence for which they seek loss of consortium and mental anguish as elements of damages. Moreover, neither plaintiff nor Intervenors have cited any authority from which the court could conclude that such claims are cognizable under Louisiana law.  Louisiana Civil Code Art. 2315.B governing "Liability for Acts Causing Damages" provides that "[d]amages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person."  Louisiana Civil Code Art. 2315.B.  Moreover, any independent claims for mental anguish asserted by plaintiff and Intervenors is precluded because the mental anguish that they undoubtedly experienced "did not occur within the limited circumstances prescribed by Article 2315.6 as the sole basis for awarding damages for mental anguish caused by negligent injury inflicted upon another person."  Trahan v. McManus, 728 So.2d 1273, 1281 (La. 1999).

## IV.  Conclusion and Order

For the reasons explained above, the court concludes that PCA has carried its burden of proving that it is entitled to judgment

---

[55]Id.

as a matter of law because Louisiana has the most significant relationship to this controversy and Louisiana law therefore applies to the claims asserted in this action.   Under Louisiana law plaintiff and Intervenors lack capacity to assert claims against PCA arising from the death of Jody Lynn Gooch.   Accordingly, Defendant Packaging Corporation of America's Motion for Summary Judgment (Docket Entry No. 57) is **GRANTED**.

      **SIGNED** at Houston, Texas, on this the 17th day of July, 2019.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE